GREEN *v.* REID.

1. PARTNERSHIP—ACCOUNTING—STALE CLAIM NOT CONSIDERED BY EQUITY COURT.

    A bill filed for a partnership accounting over a third of a century after the partnership had ended, and after one of the partners had died, *held*, to present too stale a claim for consideration in a court of equity.[1]

[1]Partnership, 30 Cyc. p. 721.

2. WITNESSES—ESTATES OF DECEDENTS—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—OPPOSITE PARTY.

> Testimony by a brother, in support of his claim against his brother's estate, of an agreement between them as to division of partnership assets, made after the termination of the partnership between them, *held*, inadmissible under 3 Comp. Laws 1915, § 12553.[2]

3. PLEADING—ADMISSIONS IN BILL MAY BE CONSIDERED AGAINST INTEREST.

> Allegations in plaintiff's bill for a partnership accounting which are without proof and do not entitle him to relief may be considered by the court in so far as they are admissions against interest.[3]

4. APPEAL AND ERROR — QUESTION RAISED FIRST IN APPELLATE COURT.

> A claim by plaintiff that he is entitled to the premises in dispute because of adverse possession, made for the first time in the Supreme Court, might well be dismissed as coming too late.[4]

5. ADVERSE POSSESSION—PERMISSIVE ENTRY NOT ADVERSE.

> Allegations in plaintiff's bill for a partnership accounting that he went into possession of partner's land under permission to use it at his option to pay partnership debts, *held*, to negative his claim of title by adverse possession.[5]

6. QUIETING TITLE—ACCOUNTING FOR USE AND OCCUPATION REFUSED WHERE TOO STALE.

> Although the representatives of a deceased partner are entitled, on their cross-bill, to a decree quieting their title to land, where plaintiff was refused a partnership accounting because his claim was too stale, defendants for the same reason are refused an accounting from plaintiff for use and occupation of the land.[6]

Appeal from Montmorency; Emerick (Frank), J. Submitted October 29, 1924. (Docket No. 72.) Decided December 31, 1924.

Bill by James Green against Alex. Reid, executor of the last will of William Green, and others to quiet

---

[2]Partnership, 30 Cyc. p. 736; [3]Pleading, 31 Cyc. p. 87; [4]Appeal and Error, 3 C. J. § 625; [5]Adverse Possession, 2 C. J. § 226; [6]Quieting Title, 32 Cyc. p. 1381.

title to land and for an accounting.    From a decree
for plaintiff, defendants appeal.    Reversed, and decree
entered for defendants.

*I. S. Canfield,* for plaintiff.

*A. L. Sayles,* for defendants.

Plaintiff, James Green, and William Green were
brothers.    For a time they were partners operating
as Green Brothers in lumbering operations in Mont-
morency county and vicinity.    They also worked on
highways in the summer season.    It is the claim
of plaintiff that their last lumbering operation in the
season of 1882-83 was not profitable and at the end
of the season they were somewhat in debt.    They did
some highway work in the summer of 1883 but did no
lumbering operations in the season of 1883-84, and
in fact conducted no business together after the sum-
mer of 1883.    In the fall of 1884, William went to
the Upper Peninsula.    There is competent testimony
that he took some of the partnership property with
him and left the balance with James but it is quite
unsatisfactory as to the proportion he took, at least,
it does not establish that he took more than his
share.    The competent testimony is quite hazy on the
question of partnership debts or the individual debts
of William.    When William went north he held a
part paid swamp land certificate on 80 acres of land
in Montmorency county and a patent from the govern-
ment for the adjoining 80.

William remained in the Upper Peninsula and did
business there a great many years, occasionally visiting
his old home.    In his later life he moved to Saginaw
where he died July 5, 1920.    Defendants are his
executor and his three daughters.    This bill was filed
June 14, 1921.    It sets up the partnership, its opera-
tion, its unsuccessful season, its debts, the indebted-
ness of William and in paragraph 6 alleges:

"That in the fall of 1888 (orally amended to be 1884) the said William Green and your orator agreed to and with each other that that piece or parcel of land situated in the township of Montmorency, county of Montmorency and State of Michigan, described at the northeast quarter of section 25, township 32, north of range four (4) east, for which William Green held a swamp land certificate of purchase, being No. 7271, one-fourth of which purchase price had been before paid to the State, was to be and become the property of said copartnership to be used for the payment of the said firm's indebtedness to your orator, and said other parties herein before named, and that your orator might either sell and dispose of the same or retain it as his own for that purpose."

It also alleges that William took certain of the partnership property and alleges further that plaintiff paid the enumerated debts. The bill also alleges in paragraph 11:

"That your orator at various times urged the said William Green to come to a settlement and adjustment of their partnership dealings and accounts, which he promised to do but neglected and your orator believing that he would make such settlement, adjustment of their said accounts and pay to your orator the balance due him on account of the payments as aforesaid, did not commence any proceedings to have an accounting and settlement. That in 1911 your orator went to Newberry where said William Green then lived to obtain a settlement and at that time said William Green agreed to come to Alpena and settle with your orator but did not do so."

And in paragraph 15 it is alleged:

"Your orator charges and avers that he has an equitable lien and right to the above described premises by reason of the agreement of said William Green in his lifetime with your orator and that the same is equitably liable to the payment of the amount that may be found by the court to be due your orator from the said William Green, and his estate, upon an accounting and settlement of the partnership dealings, accounts and indebtedness."

On the same day the bill was filed, plaintiff filed with the commissioners on claims of William's estate a contingent claim setting up that he was about to file this bill and claiming that he was entitled on such accounting to $2,120 and interest.

FELLOWS, J. (*after stating the facts*). The partnership came to an end not later than the fall of 1884. Before that it had ceased to function. At that time William took a portion of the partnership property and went into business for himself; James kept the balance and thereafter conducted business for himself. This bill filed for a partnership accounting over a third of a century after the partnership was at an end and after one of the partners is dead presents too stale a claim for consideration in a court of equity.

Nor can relief be granted in this case based on an agreement to transfer or deed the premises. Plaintiff's testimony as to his dealings with his brother was put into the record over objection. The trial judge intimated that it was incompetent under the statute but allowed the record to be made. We do not consider it; it comes clearly within the statute (3 Comp. Laws 1915, § 12553). Without it there is no testimony in the record of any contract between James and William when William went north. Nor does the testimony of plaintiff's sons, that their uncle told them shortly before he died that he would deed the property to their father, establish satisfactorily to us that plaintiff had a right to the title to the premises or that he had a contract for a deed. The allegations of plaintiff's bill negative any such claim. Giving the allegations of paragraph 6 of plaintiff's bill, which we have quoted and which set up the purported arrangement, the most favorable construction to plaintiff that it is possible to give, he had an

option to use the premises to pay the debts or at his election to take the property and pay the debts himself. But the allegation in paragraph 11, which we have quoted, also negatives any claim that he elected to take the property and pay the debts because it alleges that as late as 1911 he went to see William at Newberry and importuned him to come to a settlement with reference to the debts. His contingent claim filed with the commissioners on claims shows that even at that time, months after his brother's death, he had not elected to take the property. Without proof the allegations of plaintiff's bill do not entitle him to relief but they may be considered by the court in so far as they are admissions against interest.

In a supplemental brief in this court, plaintiff for the first time insists that he is entitled to the premises because of adverse possession. No such claim was made in the bill, nor was it suggested in the court below. In plaintiff's original brief in this court no claim of adverse possession was even intimated and we might well dismiss it with the statement that it comes too late. But we have already shown that plaintiff's possession was not adverse or hostile to his brother William. We have already shown that under the allegations of his bill he entered possession with the permission of his brother and at best with an option to use the premises to pay the debts or at his election to take the premises and himself pay the debts, and that he had never exercised the option to take the premises. We have already shown that these allegations may be treated as admissions against interest. Surely they show that the possession was not adverse, was not hostile in any degree.

After the death of William his representatives paid the balance due the State and received a patent of the 80 acres from the State. A patent had been issued by the Federal government for the other 80 many

years before.    Defendants ask by way of cross-bill that their title be quieted.    From what we have said it follows that they are entitled to such a decree. They are not, however, entitled to an accounting from plaintiff for use and occupation.    We have refused plaintiff an accounting because his claim is stale; so is defendants'.    A court of equity should leave the parties where they left themselves.

A decree will be entered in this court in conformity with this opinion.    Defendants will recover costs of both courts.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.