## BROWN *v.* HARRISON.

1. EQUITY—LIMITATION OF ACTIONS—DELAYS FREQUENTLY OVERLOOKED IN EQUITY.

   While generally a court of equity will apply the statute of limitations by analogy, this is not a hard and fast rule, and delays are frequently overlooked.

2. SAME — SETTING ASIDE EXECUTION SALE — STALE CLAIM DISMISSED—LACHES.

   Where plaintiffs delayed for 30 years before bringing suit to set aside an execution sale of land, and in the meantime the persons who had knowledge of the facts and who could have refuted plaintiffs' claims if untrue have died, the claim is too stale for consideration in a court of equity, and should have been dismissed by the court below.

Appeal from Washtenaw; Sample (George W.), J. Submitted April 13, 1928. (Docket No. 147.) Decided June 4, 1928.

Bill by Esther Brown and others against Margaret

[1]Limitations of Actions, 37 C. J. § 131; [2]Equity, 21 C. J. § 229.

Harrison and Walter Ely to set aside an execution, levy, and sale. From a decree for plaintiffs, defendant Ely appeals. Reversed, and bill dismissed.

*Frank B. De Vine* and *Arthur Brown*, for plaintiffs.

*Andrew J. Sawyer* and *Floyd E. Daggett*, for defendants.

FELLOWS, J. John Harrison died testate, November 26, 1892, the owner of 40 acres of land in Superior township, Washtenaw county, then worth about $1,400. He left a widow who was his second wife and six children. The widow elected to take under the statute. His estate was administered and the final account allowed July 10, 1894. On February 5, 1896, the six children filed a bill for partition. The widow entered her appearance by J. Willard Babbitt March 3d; on April 14th, Harriman and Thompson were substituted as solicitors for defendant. There is testimony that Mrs. Harrison was somewhat ignorant and did not promptly sign her answer; her default was entered but later set aside. A final decree was entered April 17, 1897. Mr. E. B. Norris represented her at the time the decree was taken. The decree provided that the widow should have the use of the farm as a homestead during her widowhood and her dower interest during her life, and the children were each given a sixth interest after her death. Costs taxed at $25 were awarded Mrs. Harrison. On June 14th execution for the costs was issued and levied on the complainants' (in that case) interest in the land. Sale was made and certificate filed in the register's office August 3d. The execution was returned to the (then) register in chancery. The sale was to Darwin C. Griffin for $81.50. On November 29, 1898, he deeded to defendant Ely, who was the son of Mrs. Harrison by her first marriage. He has since worked the farm, although living elsewhere, has

paid taxes and supported his mother until her death. The sheriff's deed and the deed of Ely were both recorded. This bill filed by the two living children of Mr. Harrison, the other plaintiffs being grandchildren, seeks to set aside the execution sale. While it names Margaret Harrison as a defendant, it was not filed until after her death. Judge Harriman, Professor Thompson, Judge Babbitt, and Mr. Norris were also dead. Indeed, Judge Kinne, who heard the case, the clerk and deputy clerk, the sheriff who made the levy, and about every one else connected with the former case, around 30 years ago, have paid the debt of nature. There is no claim of any irregularity in the execution sale. None of the six complainants offered to pay the costs or any part of them. The premises are now worth from $10,000 to $12,000.

The plaintiffs claim in their bill that the sale should be set aside because it was agreed that only three acres were to be levied upon, and that they have remained quiescent in the belief that the levy was only on this amount of land. No one testifies to the making of such an agreement. Outside of some slight testimony that the widow recognized some right of the children, the only testimony tending to sustain such a claim comes from one of the plaintiffs, who testifies that "somewhere about 1897 or the latter part of 1898," she wrote to the judge of probate to find out about the proceeding. The judge of probate was Judge Babbitt, and she says he wrote her that the widow had the property as long as she lived and then it went to the heirs except three acres which had been sold for costs, and in answer to a leading question she said the letter stated that it had been agreed to sell three acres from the east part of the farm for the costs. She was unable to produce the letter.

While Judge Babbitt originally appeared for Mrs. Harrison, he took no part in the case so far as the record discloses, and about a month after entering his

appearance he withdrew from the case, and Judge Harriman and Professor Thompson became her solicitors.    The final decree was entered about a year later, and so far as the record discloses he had nothing further to do with the case.    As judge of probate, his office was in the same court house as was that of the county clerk where rested the return of the sheriff showing a levy on and sale of the entire 40 acres, in the same court house as was that of the register of deeds where rested a record of the levy, the sheriff's deed, and the deed from the purchaser to Ely.    It seems incredible that he would have written a letter without having made inquiry of one or the other of these officers, and it seems particularly incredible that he would have advised her that there had been a sale for costs and a sale of only three acres, when the records under his very nose showed a sale of 40 acres.

Defendants' counsel insisted in the court below and do here that the laches of plaintiffs precludes recovery here.    It is a general rule that a court of equity will apply the statute of limitations by analogy.    But this is not a hard and fast rule.    The court of equity frequently overlooks delays.    Plaintiffs' counsel insist that defendants' position has not been changed by the delay.    But this is not true.    Thirty years ago there were several persons living who could have disputed the plaintiffs' testimony if it were not true.    Mrs. Harrison knew whether she had made any agreement, but the bill was not filed until after her death.    Judge Babbitt knew whether he had written such a letter as was testified to, but he had joined the great majority. If any such agreement had been made, doubtless Judge Harriman or Professor Thompson or Mr. Norris would have known about it, but they too have solved the problem of life and death.    Every person who could have had knowledge of the facts and been able to refute the testimony of plaintiffs had passed on in

the 30 intervening years.    In *Green* v. *Reid,* 229 Mich. 503, it was said:

"This bill filed for a partnership accounting over a third of a century after the partnership was at an end and after one of the partners is dead presents too stale a claim for consideration in a court of equity."

In *Eames* v. *Manley,* 121 Mich. 300, it is said:

"It is not until her brother, his wife, and Mr. Parker, who are said to have perpetrated the fraud, are all dead, and cannot repel the attacks made upon them, and whose versions cannot be given of the various transactions, which have been spread upon the records of the courts and the registry offices, this claim of fraud is made.    It is difficult to imagine a case where the laches are less excused.    If this bill can be entertained now, when the parties who possessed the requisite knowledge to enable the truth to be known about the various transactions have long since died, there can be no safety in acting upon conveyances and records of courts."

The decree granting plaintiffs the relief prayed will be set aside and one here entered dismissing the bill, with costs of both courts to defendant.

FEAD, C. J., and NORTH, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.