LOTHIAN v CITY OF DETROIT

Docket No. 64875. Argued May 6, 1981 (Calendar No. 7).—Decided
September 13, 1982.

Robert Lothian retired in 1962 after 25 years of service in the
Detroit Police Department in order to accept the appointive
civilian position of Second Deputy Police Commissioner of the
City of Detroit. Because of a city policy then in effect, he was
required to waive his right to pension benefits for the duration
of his civilian employment with the city. He retired from his
commissioner's position in 1967, and began receiving his pen-
sion benefits. In 1973, the Court of Appeals held a similar
waiver by a Detroit policeman upon his election to the Common
Council of Detroit to be invalid. The plaintiff, recognizing a
parallel between the case and his situation demanded volun-
tary payment of the waived benefits. Upon denial of his re-
quest, he brought an action for mandamus against the city and
the Board of Trustees, Policemen and Firemen Retirement
System, in the Wayne Circuit Court. The court, Charles S.
Farmer, J., granted mandamus, ordering the defendants to pay
all pension benefits withheld during the plaintiff's civilian
service. The Court of Appeals, T. M. Burns, P.J., and N. J.
Kaufman, J. (Bashara, J., dissenting), affirmed in an unpub-
lished opinion per curiam (Docket No. 78-4759). The defendants
appeal.

In an opinion by Chief Justice Coleman, joined by Justices
Kavanagh, Williams, Levin, Fitzgerald, and Ryan, the Supreme
Court *held:*

The plaintiff's claim is barred because of his delay in bring-
ing the action.

1. The Revised Judicature Act provides that prescribed peri-
ods of limitation apply equally to equitable and legal actions.

REFERENCES FOR POINTS IN HEADNOTES
[1] 51 Am Jur 2d, Limitation of Actions §§ 15, 21, 22.
[2] 51 Am Jur 2d, Limitation of Actions §§ 422 *et seq.,* 457.
[3, 4, 6] 27 Am Jur 2d, Equity §§ 152 *et seq.,* 157 *et seq.*
    51 Am Jur 2d, Limitation of Actions § 6.
[5] 27 Am Jur 2d, Equity § 152 *et seq.*
[6] 28 Am Jur 2d, Estoppel and Waiver § 45.

While there are equitable aspects to the plaintiff's claim, the action is not purely equitable. The heart of the plaintiff's claim is that the defendants breached their contractual obligation to pay retirement benefits. Equity was invoked principally with respect to the process through which the plaintiff would obtain relief were his contractual claim cognizable. There are no compelling equities involved in the case which would work to enlarge the limitations period. The plaintiff could have brought his action within the statutory period. The defendants used no artifice or fraud to induce the plaintiff's forbearance; the limitations period was not tolled or waived by the defendants; nor can fraudulent conduct be imputed to them. The only party responsible for inducing the plaintiff's delay is the plaintiff himself. He was wholly apprised of the facts which comprised his cause of action at the time his waiver was executed. The fact that the merit of his claim became more evident to him following the Court of Appeals decision is not significant and does not alter the plaintiff's responsibility for his action. He had the primary obligation to secure prompt resolution of his claim. Having failed to demonstrate his good faith and diligence to learn the truth, he is not entitled to relief on the ground of equitable estoppel.

2. The Court of Appeals erred in holding that the Supreme Court had approved a flexible rule in equity cases to determine the existence of laches and thereby expand the applicable period of limitations. Laches is not an affirmative device. It may not be used to breathe life into an expired cause of action. Instead, it is a measure to be interposed as a defense to claims which are stale as well as prejudicial to a defendant.

3. It was equity and the absence of laches which traditionally, on occasion, had permitted a plaintiff to proceed in the face of an expired limitations period. The Court of Appeals further erred in failing to recognize the effect of that section of the Revised Judicature Act which provides that a prescribed period of limitations will apply in equitable actions as well as legal actions in addition to the equitable doctrine of laches.

4. The plaintiff argues that the defendants are estopped from setting up the laches-limitations defense because their conduct induced him to forbear bringing suit until after the statute had run. Generally, to justify the application of estoppel, it must be established that there has been a false representation or concealment of material fact, an expectation that the other party will rely upon this conduct, and knowledge of the actual facts on the part of the representing or concealing party. The Court has been reluctant to recognize an estoppel in the absence of

conduct clearly designed to induce the plaintiff to refrain from bringing the action within the period fixed by statute. There was no such conduct here.

Justice Moody concurred in the conclusion that the plaintiff's claim is barred as untimely. However, he could not subscribe to some of the Court's broader generalizations concerning the doctrines of laches and equitable estoppel.

Reversed and remanded.

### Opinion of the Court

1. LIMITATION OF ACTIONS — PROCEDURE.

A statute of limitations is a legislative determination of the reasonable period of time that a claimant will be given in which to bring an action; the statute is procedural, not substantive, in nature, and the fact of delay extending to the prescribed limit, without further proof, is a conclusive bar to suit.

2. LIMITATION OF ACTIONS — SUSPENSION OF RUNNING — WAIVER — ESTOPPEL.

The running of an applicable period of limitation may be suspended under certain circumstances, such as during a claimant's personal disability, or the limitation may be waived by express agreement, by failure to plead it, or by conduct which estops a defendant from interposing it (MCL 600.5851 *et seq.*; MSA 27A.5851 *et seq.*).

3. EQUITY — LACHES — LIMITATION OF ACTIONS.

The doctrine of laches exercises the reserved power of equity to withhold relief otherwise afforded where its grant would be unfair and unjust; it differs from statutes of limitation in that it is not determined merely by the passage of time—the fact of a delay in bringing an action—but with prejudice occasioned by the delay—the effect of delay.

4. EQUITY — LACHES — LIMITATION OF ACTIONS.

Laches may be invoked by a defendant to bar a plaintiff's claim without reference to any statutory limitations period in cases which are purely equitable or which display compelling equities; in cases in which corresponding relief is available at law, the existence of laches generally will be ascertained by reference to an analogous statute of limitations.

5. EQUITY — LACHES.

Laches is not an affirmative device which may be used to revive an expired cause of action, but is a measure to be interposed as

a defense to claims which are stale as well as prejudicial to a defendant.

6. ESTOPPEL — LIMITATION OF ACTIONS — CONDUCT.

For an equitable estoppel to preclude the defendant from raising the statute of limitations as a defense, there must have been conduct clearly designed to induce the plaintiff to refrain from bringing action within the period fixed by statute.

*Donald A. Calkins* for plaintiff.

*Sylvester Delaney,* Deputy Corporation Counsel, and *William Dietrich* and *Michael A. Hurvitz,* Assistants Corporation Counsel, for defendant.

COLEMAN, C.J. In this case, we are asked to decide whether plaintiff's claim for accrued retirement benefits, filed long after the applicable statutory period of limitations had expired, is barred. We hold that plaintiff's claim is barred. Accordingly, we reverse.

## I

In 1962, plaintiff Robert Lothian,[1] a veteran member of the Detroit police force, decided to retire. Shortly before his retirement, plaintiff was offered the appointive civilian position of Second Deputy Police Commissioner. Plaintiff accepted the offer. On August 7, 1962, he communicated with the city's Policemen and Firemen Retirement System to process the necessary papers for his retirement, which was scheduled to take place later that month. At that time, Peter Zylich, the secretary of the board of trustees of the retirement system, informed plaintiff that city policy prohibited persons collecting a salary from the city from simultaneously receiving city-paid pension benefits. Plain-

[1] Plaintiff's brief on appeal advises that Mr. Lothian died on December 8, 1980.

tiff was told that he would have to waive his pension benefits for the duration of his civilian employment with the city as Second Deputy Police Commissioner. Plaintiff executed the waiver on August 7.[2] Plaintiff retired from the police force on August 16, 1962. On September 21, 1962, he received his appointment as Second Deputy Commissioner, a capacity in which he served until his retirement in August, 1967.

The catalyst in this case was the Court of Appeals issuance, on June 25, 1973, of its opinion in *Van Antwerp v Detroit,* 47 Mich App 707; 210 NW2d 3 (1973).[3] The facts of the *Van Antwerp* case are facially similar to those in the case at bar. There, a pensioner of the City of Detroit had been required to execute a waiver of his pension benefits after his election to the Detroit Common Council because of the same city policy asserted in the instant case. The Court of Appeals determined that the city could not lawfully change the manner in which it administered pension benefits without first amending the Detroit City Charter. The Court additionally held that Mr. Van Antwerp's waiver was invalid because it did not contemplate a voluntary relinquishment of a known right.

[2] The waiver executed by plaintiff read as follows:

"WAIVER

"To the Board of Trustees of the
"Policemen and Firemen Retirement System

"I, Robert A. Lothian, being eligible to receive a pension by reason of service in the Detroit Police Department, and desirous of carrying out the duties and functions of Second Deputy Police Commissioner and civilian head of the Police Department's Business Administration, to which I have been appointed, do hereby waive, release and refuse any pension payments to which I shall be entitled from my effective date on and so long as I shall continue to occupy the appointive title.

"This I do of my own free will and accord."

[3] *Lv den* 390 Mich 781 (1973).

Plaintiff, recognizing a parallel between his situation and that of Mr. Van Antwerp, by letter dated November 14, 1973, demanded voluntary payment of those pension benefits which the retirement system had withheld from him during his tenure as Second Deputy Commissioner. The board of trustees denied his request on January 24, 1974.

On May 8, 1974, plaintiff instituted the present action in the Wayne Circuit Court, alleging that defendants unlawfully withheld $21,247.71 in pension benefits due him, and requesting that mandamus issue against defendants. After an abbreviated[4] trial, the trial court issued a judgment granting mandamus and ordering defendants to pay to plaintiff all pension benefits withheld during his civilian service.

On March 7, 1980, the Court of Appeals affirmed in an unpublished per curiam opinion.[5] This Court granted defendants' application for leave to appeal on November 20, 1980, 409 Mich 946 (1980).

II

Because the instant case is addressed to the interplay between the equitable doctrine of laches and its counterpart at law, the statute of limitations, we pause briefly to examine the traditional roles of these two doctrines.

A statutory limitations period represents a legislative determination of that reasonable period of time that a claimant will be given in which to file an action. A statute of limitations is a statute of

---

[4] The only witnesses at trial were plaintiff and Peter Zylich.

[5] The Court of Appeals panel was split 2 to 1, Judge BASHARA dissenting.

presumption. The fact of " 'delay extending to the limit prescribed' ", without further proof, " 'is itself a conclusive bar' " to suit, *Ramsey v Child, Hulswit & Co,* 198 Mich 658, 671; 165 NW 936 (1917).[6] Although at one time limitations provisions were looked upon with disfavor because of the harsh results worked by their application,[7] the modern view treats them as statutes of repose, *McKisson v Davenport,* 83 Mich 211; 47 NW 100 (1890), and as "wise and beneficial"[8] laws common to " 'all systems of enlightened jurisprudence' ". *Ramsey, supra,* 671. In general, statutes of limitations are regarded as procedural, not substantive, in nature. *Forest v Parmalee,* 402 Mich 348, 359; 262 NW2d 653 (1978); *Buscaino v Rhodes,* 385 Mich 474; 189 NW2d 202 (1971).[9] The statute of limitations is assertable as a "perfectly righteous * * * meritorious" affirmative defense. *Bigelow v Walraven,* 392 Mich 566, 570; 221 NW2d 328 (1974); GCR 1963, 111.7.

Limitations periods created by statute are grounded in a number of worthy policy considerations. They encourage the prompt recovery of damages, *Buzzn v Muncey Cartage Co,* 248 Mich 64, 67; 226 NW 836 (1929); they penalize plaintiffs who

[6] The language cited in *Ramsey* is extracted from *Wood v Carpenter,* 101 US 135; 25 L Ed 807 (1879).

[7] The historical roots of statutes of limitations are sketched in Comment, *Developments in the Law—Statutes of Limitations,* 63 Harv L Rev 1177 (1950).

[8] *Bell v Morrison,* 26 US (1 Pet) 351, 360; 7 L Ed 174 (1828), quoted in *Abbott v Michigan State Industries,* 303 Mich 575, 580; 6 NW2d 900 (1942).

[9] An exception to the usual rule that statutes of limitations are procedural, rather than substantive, is that where a new cause of action has been created by statute, a limitations statute specifically directed to this new cause of action generally is regarded as substantive. See Comment, *Conflict of Laws—The Nature of Statutes of Limitation,* 50 Mich L Rev 302 (1951).

have not been industrious in pursuing their claims, *First National Bank of Ovid v Steel,* 146 Mich 308; 109 NW 423 (1906); they "afford security against stale demands when the circumstances would be unfavorable to a just examination and decision", *Jenny v Perkins,* 17 Mich 28, 33 (1868); they relieve defendants of the prolonged fear of litigation, *Bigelow, supra,* 576; they prevent fraudulent claims from being asserted, *Bailey v Glover,* 88 US (21 Wall) 342; 22 L Ed 636 (1875); and they " 'remedy * * * the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert' ". *Lenawee County v Nutten,* 234 Mich 391, 396; 208 NW 613 (1926).

There is a maxim in law "that nothing can interrupt the running of the statute of limitation", *Klass v Detroit,* 129 Mich 35, 39; 88 NW 204 (1901). However, exceptions to this tenet have been developed by both the courts and the Legislature. Under certain circumstances, *e.g.,* for the duration of a claimant's personal disability (and perhaps for a specified time thereafter), MCL 600.5851; MSA 27A.5851, the running of the applicable statute of limitations may be suspended. Similarly, this affirmative defense may be waived by failure to plead it, by express agreement not to assert it, or by conduct which estops the defendant from interposing it. See *Kibbey v Gordon Mfg Co,* 260 Mich 531; 245 NW 512 (1932); *Klass, supra; Renackowsky v Board of Water Comm'rs of Detroit,* 122 Mich 613; 81 NW 581 (1900); *Voorheis v People's Mutual Benefit Society of Elkhart, Indiana,* 91 Mich 469; 51 NW 1109 (1892); *Allen v Conklin,* 112 Mich 74; 70 NW 339 (1897); 51 Am Jur 2d, Limitation of Actions, §§ 422-452, pp 894-914.

Laches,[10] the corresponding judicially imposed equitable principle, denotes "the passage of time combined with a change in condition which would make it inequitable to enforce a claim against the defendant." *Tray v Whitney,* 35 Mich App 529, 536; 192 NW2d 628 (1971). The doctrine of laches reflects "the exercise of the reserved power of equity to withhold relief otherwise regularly given where in the particular case the granting of such relief would be unfair and unjust." Walsh, Equity, § 102, p 472. Laches differs from the statutes of limitation in that ordinarily it is not measured by the mere passage of time, *Smith v Sprague,* 244 Mich 577; 222 NW 207 (1928); *Chamski v Wayne County Board of Auditors,* 288 Mich 238; 284 NW 711 (1939); *Chesnow v Nadell,* 330 Mich 487; 47 NW2d 666 (1951). Instead, when considering whether a plaintiff is chargeable with laches, we must afford attention to prejudice occasioned by the delay. As a general rule, "[w]here the situation of neither party has changed materially, and the delay of one has not put the other in a worse condition, the defense of laches cannot * * * be recognized." *Walker v Schultz,* 175 Mich 280, 293; 141 NW 543 (1913). Simply stated, "laches [is concerned] with the *effect* of delay", while "limitations are concerned with the *fact* of delay". *Sloan v Silberstein,* 2 Mich App 660, 676; 141 NW2d 332 (1966). Like its legal counterpart, laches is pled as an affirmative defense. *Chippewa County Board of Supervisors v Bennett,* 185 Mich 544; 152 NW 229; 153 NW 814 (1915).

Although laches is recognized as a doctrine independent from the statute of limitations, both in its development and in its conceptualization, in cer-

---

[10] Note that the word "laches" is etymologically related to the word "lax".

tain cases arising in equity courts have readily resorted to a particular technique by which they apply statutory limitations provisions "by analogy":

"[T]here has been a strong tendency to apply by analogy the corresponding limitation at law fixed by statute upon corresponding legal actions, and to hold that delay beyond that period will bar the action in equity without much attention to whether an important change in the position of the parties has taken place or not." Walsh, Equity, § 102, p 474.

See, also, *Young v Young*, 200 Mich 236; 167 NW 23 (1918); *Brown v Harrison*, 242 Mich 603; 219 NW 606 (1928). As suggested by the excerpt above, judicial inclination to apply limitations provisions by analogy is limited to those cases in which the law provides relief analogous to that awardable in chancery. "Equity follows the analogies of the law in all cases where an analogous relief is sought upon a similar claim." *Michigan Ins Co of Detroit v Brown*, 11 Mich 265, 272 (1863). See, also, *People ex rel Attorney General v Michigan Central R Co*, 145 Mich 140, 145; 108 NW 772 (1906); *Campau v Chene*, 1 Mich 400 (1850); *Jenny, supra.* The reason underlying this "by analogy" technique is self-evident. This approach plugs the gap which might otherwise allow a plaintiff to dodge the bar set up by a limitations statute simply by resorting to an alternate form of relief provided by equity. In this vein, Justice COOLEY's remarks in *Smith v Davidson*, 40 Mich 632, 633 (1879), are appropriate:

"[I]f [a claim is held] barred at law, it must be held barred in equity also. The policy of the statute * * * cannot be evaded by the party electing one forum rather than another for litigating the rights which he

disputes; but equity by analogy will apply the limitation to his case."

See, also, *Michigan Central R Co, supra.*

However, it is clear that courts traditionally have not bent to the strictures of a statute of limitations where the law does not supply relief analogous to that afforded in equity. Thus, it is said that where "compelling equities are shown", *Moross v Oakman,* 257 Mich 464, 466; 241 NW 181 (1932), or "where the relief is in its nature one of equitable and not of legal cognizance, and the remedy is of a purely equitable nature, equity follows its own rules", *Michigan Ins Co, supra,* 272. In such cases, laches will stand on its own as the controlling doctrine.

Thus, laches might be viewed from two different perspectives in the traditional context: (1) in cases which are "purely equitable" or which display "compelling equities", laches may be invoked by a defendant to bar a plaintiff's claim without reference to any statutory limitations period, *i.e.,* a claim may be held barred by laches early in the lawsuit, or long after all available statutory limitations provisions have expired, see *Rodgers v Beckel,* 172 Mich 544, 550; 138 NW 202 (1912); or (2) in equity cases in which corresponding relief is available at law, the existence of laches generally will be ascertained with reference to an analogous statute of limitations.

III

On appeal, defendants contend (1) that the Court of Appeals reliance upon this Court's decision in *Seguin v Madison,* 328 Mich 600; 44 NW2d 150 (1950), in support of its conclusion that plaintiff's suit had been timely filed, was misplaced; (2) that

MCL 600.5815; MSA 27A.5815 operates to bar plaintiff's action; and (3) that no extenuating circumstances appear on this record to justify an expansion of the applicable statutory limitations period.

## A

We first address the propriety of the Court of Appeals reliance upon *Seguin* and the accuracy of the majority's analysis of that case in light of the facts presented here. Preliminary to our discussion, a brief summary of the position adopted by the Court of Appeals is warranted.

In discussing the procedural consequences of plaintiff's delay in filing the instant action, the Court of Appeals initially ascertained that plaintiff's action had been filed beyond the six-year limitations period for breach of contract specified in MCL 600.5807; MSA 27A.5807.[11] However, the Court did not consider this factor to be determinative of the question whether plaintiff's action was barred by laches. Instead, the majority proceeded to discuss this Court's decision in *Seguin,* distilling therefrom certain principles which it deemed pertinent to the question at hand:

"In *Seguin v Madison,* 328 Mich 600, 607; 44 NW2d 150 (1950), the Supreme Court indicated that the doc-

[11] Plaintiff's action is founded on contract, *i.e.,* plaintiff's complaint alleges that defendants' unlawful withholding of pension benefits was in violation of plaintiff's contractual right to uninterrupted benefits. Thus, the Court of Appeals correctly concluded that the six-year limitations period provided for in MCL 600.5807; MSA 27A.5807 applies. That plaintiff's action is denominated as a claim for mandamus should not alter our determination of the applicable limitations period. *McRae v Auditor General,* 146 Mich 594; 109 NW 1122 (1906). The record reveals that plaintiff did not file his action within six years after his cause of action accrued.

trine of laches, under narrowly prescribed circumstances, may expand the statutory period for bringing suit. In that case, a unanimous Court found that 'Courts of equity accept the statute as fixing a proper period of repose for rights in equity as well as at law and apply it unless the suit is peculiarly equitable in nature or compelling equities are shown'. Thus, the *Seguin* Court approved a flexible rule to be controlled by the peculiar circumstances of each case. See also *Carpenter v Mumby,* 86 Mich App 739, 746-748; 273 NW2d 605 (1978)."

The Court then examined the merits of the instant case, determined that they exposed peculiar circumstances which permitted expansion of the limitations period, and concluded that plaintiff's action had not been barred, even though it had been instituted after the period of limitations had expired.[12]

We agree with defendants that the Court of Appeals erred in utilizing *Seguin* as a basis for affording plaintiff additional time in which to file his action for retirement benefits. We take issue both with the majority's interpretation of *Seguin* and with its application of what it perceived to be

_____

[12] The Court of Appeals stated:

"The circumstances of the instant case call for the expansion of the statutory period for bringing suit. The defendant attempted to terminate plaintiff's pension benefits pursuant to a publicly undeclared board policy that benefits not be paid while plaintiff was employed by defendant in a civilian capacity. However, the charter provision, upon which defendant's retirement system is based, contains no language modifying the pension plan in the manner sought by defendant's board policy. It merely states that eligible retirees *shall* receive pension benefits. See Title 9, chapter 7 of the Charter of the City of Detroit, Article 6, Section 2.1. Plaintiff was an eligible employee as of the date of his police retirement. His matured right to pension benefits should not have been undermined by defendant's policy, absent modifying language in the charter or a charter amendment to such effect. Furthermore, and as a consequence of the foregoing, plaintiff's waiver, which was executed in reliance upon defendant's policy representations, cannot be considered to have been knowingly or voluntarily entered."

the "rule" of *Seguin* in the face of a significant
statutory provision, MCL 600.5815; MSA 27A.5815.

The Court of Appeals characterization of *Seguin*
as proposing or approving "a flexible rule to be
controlled by the circumstances of each case" is
misguided. The *Seguin* case concerned an action to
set aside an interest in lands, commenced more
than 30 years after the plaintiffs' cause of action
had accrued. An assortment of equitable relief was
requested from the trial court by the plaintiffs.
However, the trial court determined that the
plaintiffs were chargeable with laches, since they
continuously had been apprised of the relevant
facts with reference to the lands in question, and
yet had delayed filing their action.

On appeal, this Court affirmed. However, con-
trary to what is suggested by the Court of Appeals
in the case at bar, in so doing, we did not "[find]
that 'Courts of equity accept the statute as fixing a
proper period of repose for rights in equity as well
as at law and apply it unless the suit is peculiarly
equitable in nature or compelling equities are
shown' ". In fact, the quoted material did not origi-
nate in *Seguin* at all (as the Court of Appeals
indicates), but instead was formulated in an ear-
lier case, *Moross, supra.* It appears that this lan-
guage was only quoted by the *Seguin* Court in an
effort to summarize concisely the traditional appli-
cation of the doctrine of laches. The actual holding
of *Seguin* is neither profound nor particularly
significant here. It is merely that courts of equity
will decline to assist those who have been dilatory
in asserting their claims. Above all, *Seguin* cannot
be viewed as authority for the proposition that
flexibility is, in every case, the standard to be used
in determining the application of laches.

Even assuming the current validity of the tradi-

tional rule stated in *Moross,* that equity will act at times to permit a plaintiff to entertain an action which is late when measured against the stopwatch of the statute of limitations, see, also, *Michigan Ins Co, supra,* we find that the Court of Appeals erred in its determination that the case at bar presents circumstances which will permit plaintiff to maintain his action despite delay in excess of the applicable limitations provision. As we have stated previously, equity traditionally is governed by its own rules (*i.e.,* laches alone will apply without adherence to statutory provisions) only where the matter is "purely equitable"—no concurrent or analogous relief exists at law to provide a basis for deference in equity to analogous limitation statutes—or where "compelling equities" are exhibited. The instant case cannot be characterized as "purely equitable", nor can it properly be viewed as a matter riddled with "compelling equities".

While there are certain equitable aspects to plaintiff's case, this feature in itself does not warrant denomination of the action as one purely in equity. The heart of plaintiff's action is that defendants allegedly have breached their contractual obligation to pay to plaintiff certain sums of money upon his retirement from the police force. Equity has been principally invoked with respect to the process through which plaintiff will receive relief (mandamus) if his contractual claim is cognizable.[13]

Nor do we perceive any compelling equities in

---

[13] Mandamus has been described as "a legal process * * * governed by equitable principles." *McRae v Auditor General,* 146 Mich 594, 596; 109 NW 1122 (1906). An additional equitable feature in this case is the apparent need for rescission of the waiver in the event plaintiff prevails on the merits of his claim.

this case which might work to enlarge the time period given plaintiff in which to file his action. Very simply, this is a case in which plaintiff, wholly apprised of the facts which constituted his cause of action, chose to sleep on his rights until a subsequent appellate court decision roused him to action. Plaintiff could easily have ascertained the merit of his case by referring to the applicable charter provisions in 1962 or thereabouts. Defendants used no artifice or fraud to induce plaintiff to forbear filing suit. Plaintiff has not provided us with any evidence that defendants misrepresented the existence of the city's retirement policy, or that other fraudulent conduct is to be imputed to them. Under these circumstances, the only party responsible for inducing plaintiff's delay in presenting his claim is plaintiff himself.

One further commentary upon the Court of Appeals opinion in this case is in order. Neither *Seguin* nor *Moross* supports the remarkable proposition that laches may be applied to breathe life into an expired cause of action. Laches is not, by any stretch of the imagination, an affirmative device. It is, instead, a cut-off measure, interposed as a defense designed to lay to rest claims which are stale as well as prejudicial to the defendant. It is equity—and the *absence* of laches—which have in tradition occasionally permitted plaintiffs to proceed in the face of an expired statutory limitations period.

However, not only did the Court of Appeals err in interpreting *Seguin* and the traditional laches rule with reference to the facts of the instant case, it also failed to recognize the effect of a statute which we consider to be determinative of the issue before us, MCL 600.5815; MSA 27A.5815.

B

The limitations chapter of the Revised Judica-

ture Act details a number of provisions which act to suspend or expand the time allotted by statute for bringing an action.[14] Plaintiff does not contend that any of these extending provisions are operable here.[15] Nor does he aver that defendants have expressly waived the laches-limitations defense.

The thrust of plaintiff's argument in this regard is that defendants are estopped from setting up the laches-limitations defense because their conduct induced him to forbear bringing suit until after the statute had run. Basically, defendants respond that they are not precluded from interposing these defenses, since plaintiff was wholly apprised of the facts which comprised his cause of action at the time he executed the waiver of retirement benefits.

The doctrine of equitable estoppel, a judicially fashioned exception to the general rule which provides that statutes of limitation run without interruption, see *Klass, supra,* 129 Mich 39, "is essentially a doctrine of waiver" which "serves to extend the applicable statute of limitations—by

[14] The limitations chapter provides, *inter alia,* that the limitations period prescribed by statute will be tolled in the event of the plaintiff's disability, MCL 600.5851; MSA 27A.5851; when the defendant is absent from the state and the court has not acquired jurisdiction over him, MCL 600.5853; MSA 27A.5853; during times of war, if the plaintiff is a citizen of a country at war with the United States, MCL 600.5854; MSA 27A.5854; while plaintiff's claim remains undiscovered (and for two years after discovery) as a result of defendant's fraudulent concealment of the cause of action, MCL 600.5855; MSA 27A.5855; and when the complaint has been filed and the defendant has been served, MCL 600.5856; MSA 27A.5856. Naturally, when equity determines to follow the dictates of a limitations statute, or where the statute of limitations is made expressly applicable to suits in equity, these same tolling provisions are relevant.

[15] However, one of these statutory provisions, MCL 600.5855; MSA 27A.5855, is closely allied with plaintiff's equitable estoppel argument. See Dawson, *Estoppel and Statutes of Limitation,* 34 Mich L Rev 1, 23-24 (1935); *Developments in the Law, supra,* 63 Harv L Rev 1222-1223.

precluding the defendant from raising the bar of the statute", *Huhtala v Travelers Ins Co,* 401 Mich 118, 132-133; 257 NW2d 640 (1977). Equitable estoppel may be introduced to counter a statute of limitations defense so as "to accomplish the prevention of results contrary to good conscience and fair dealing", *McLearn v Hill,* 276 Mass 519, 524; 177 NE 617 (1931). Generally, to justify the application of estoppel, one must establish that there has been a false representation or concealment of material fact, coupled with an expectation that the other party will rely upon this conduct, and knowledge of the actual facts on the part of the representing or concealing party. See 28 Am Jur 2d, Estoppel and Waiver, § 35, p 640.

An overview of Michigan cases addressed to the estoppel theory in the context of the statute of limitations defense discloses that this Court has been reluctant to recognize an estoppel in the absence of conduct clearly designed to induce "the plaintiff to refrain from bringing action within the period fixed by statute". *Renackowsky, supra,* 122 Mich 616. See *Green v Detroit,* 87 Mich App 313, 319; 274 NW2d 51 (1978). For example, in *Klass, supra,* 129 Mich 39-40, this Court observed that the estoppel exception developed by the courts "seems to be limited to cases involving an intentional or negligent deception". Thus, "the defendant will not be precluded from availing himself of such defense [limitations] unless it can be fairly said that he is responsible for deceiving the plaintiff, and inducing him to postpone action upon some reasonably well grounded belief that his claim will be adjusted if he does not sue." Similarly, in *Hughes v Detroit,* 336 Mich 457, 462; 58 NW2d 144 (1953), a case which referred to certain of the language from *Klass* noted above, this Court

emphasized the existence of "inducements * * * held out to plaintiff to delay starting suit" as a requisite for application of the estoppel theory.

Consideration of the factors which must be established to make out an estoppel, along with the limited approach taken in earlier cases to the application of estoppel in the limitations environment, leads us to conclude that plaintiff's equitable estoppel argument is untenable. Plaintiff has not persuaded us that the statements made to him by Mr. Zylich at the time the waiver was executed amounted to false representations, or that defendants' conduct involved concealment of any material fact. Defendants, at most, are chargeable only with having implemented a city policy which would be struck down by an appellate court more than a decade later. The only fact represented to plaintiff was that the city had such a policy. Defendants did not intimate that this policy had been judicially tested, or that it was legally unassailable (i.e., that plaintiff would not have had a case against the city had he been of a mind to challenge the policy in court).[16] Notably absent here is the usual sort of conduct which may work an estoppel in the statute of limitations context, e.g., an offer to compromise or settle plaintiff's claim, a representation that the limitations period was of much greater duration than it actually was, or part payment of plaintiff's claim. Nor can we impute to defendants conduct which might be labelled "intentional" or even "negligent" deception, see Klass, supra.

---

[16] One factor "which may bear on the degree of negligence or culpability of the public agency [is] * * * whether it purports to advise and direct or merely to inform and respond to inquiries," Driscoll v Los Angeles, 67 Cal 2d 297, 307; 61 Cal Rptr 661; 431 P2d 245 (1967).

In short, we cannot say that defendants' conduct was designed to induce—or in fact did induce—plaintiff's delay in commencing his action. All of the material facts surrounding plaintiff's claim were disclosed to him in 1962 or thereabouts. That the merit of his claim became more evident to plaintiff after the Court of Appeals decision in *Van Antwerp* is not a significant factor on this record, and certainly does nothing to alter our perception that the responsibility for plaintiff's action lies with himself. "One cannot sit back, wait years for someone else to act as his stalking horse, and then ride the coattails of a favorable judicial decision irrespective of the delay involved." *Gruca v United States Steel Corp,* 495 F2d 1252, 1259 (CA 3, 1974). Certainly, plaintiff, like most other litigants, had a primary obligation to secure prompt resolution of his claim in the courts. Having failed to demonstrate his " 'good faith and diligence to learn the truth' ", *American Trust Co v Bergstein,* 246 Mich 527, 530-531; 224 NW 327 (1929), plaintiff is not entitled to relief on the basis of equitable estoppel, relief which is awardable exclusively in the exercise of good conscience.[17]

## IV

We hold that plaintiff's action in mandamus to recover retirement benefits withheld by defendants

---

[17] Plaintiff additionally claims that defendants are estopped from interposing the laches-limitations defense because a fiduciary or confidential relationship existed between the parties. Although it has been noted that the relationship between a pension applicant and a pension board may be viewed as a confidential one, it appears that this aspect is primarily significant only insofar as it relates to "the seriousness of the effect of the public agency's conduct or advice on the claimant." *Driscoll, supra,* 308. In the case at bar, the nature of the relationship extant between plaintiff and defendants is of little importance, given the fact that plaintiff's decision to delay filing suit was not induced as a consequence of the relationship.

for the duration of his civilian employment with the city is barred as a result of plaintiff's extreme and inexcusable delay in filing suit.

Accordingly, we reverse the judgments of the trial court and the Court of Appeals, and we remand this matter to the trial court for proceedings consistent with this opinion.

KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, and RYAN, JJ., concurred with COLEMAN, C.J.

BLAIR MOODY, JR., J. *(concurring).* I concur in the Court's conclusion that plaintiff's claim for accrued retirement benefits is barred as untimely. Plaintiff filed suit after the six-year statutory limitation period applicable to breach of contract actions had expired. Equitable considerations, given the facts and circumstances of this case, do not compel a different result. However, I cannot subscribe to some of the Court's broader generalizations concerning the doctrines of laches and equitable estoppel found in Part III of its opinion.