# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL LEAVINE,

Plaintiff-Appellant,

v

LINDA L. GEMBARSKI, Individually and as
Personal Representative of the ESTATE OF
PHILIP LEAVINE,

Defendant-Appellee.

UNPUBLISHED
February 22, 2018

No. 336094
Huron Circuit Court
LC No. 15-105320-CH

Before: JANSEN, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals as of right from a judgment of no cause of action, following a bench trial, relative to plaintiff's petition to set aside defendant's deeds to disputed real and personal property. Plaintiff also challenges an order granting summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim) on plaintiff's claim of unjust enrichment as to defendant personally, and an order granting summary disposition pursuant to MCR 2.116(C)(7) (statute of limitations) and the doctrine of laches on plaintiff's claim of unjust enrichment against the estate. We affirm.

## I. FACTS

Plaintiff and defendant are siblings and the nephew and niece, respectively, of the decedent, Philip Leavine. Prior to his death in November 2014, the decedent owned and operated a dairy farm on his 80-acre parcel of land in Dwight Township, Huron County. Several of the decedent's family members, including both parties, helped the decedent operate his farm at various times over the years; plaintiff estimated that he worked an average of 10 hours a week with the decedent on his farm from 1979 to 2000. Defendant testified that after the decedent underwent triple bypass surgery in October 2001, she and her husband worked at the farm seven days a week. Defendant further indicated that as the decedent recovered, she worked at the farm less often, but when the decedent's health began to decline in or around 2010, she and her husband returned to working every day at his farm.

Plaintiff testified that he was never paid by the decedent for helping him on the farm. However, he claimed that the decedent had agreed to compensate him by giving him the 80-acre farm, as well as his farm machinery, cattle, and other personal property, upon his death.

-1-

According to plaintiff, the decedent executed two hand-written documents[1] to this effect on October 20, 2001, while he was in the hospital for heart surgery. Plaintiff represented that as part of the agreement, he had agreed to pay defendant $25,000 to help care for their uncle, and he also agreed to give her the cattle and allow her to use 30 to 40 acres of the farm to feed them. Plaintiff testified that he initially spoke with the decedent about the agreement privately, but that defendant was informed of it later and agreed to its terms. Defendant did not recall speaking to plaintiff about the arrangement or seeing the documents that the decedent had written. However, she did not dispute that the decedent had signed the documents.

On January 5, 2010, the decedent executed a quit-claim deed and a deed-of-gift to himself. The quit-claim deed was for real property described as "[t]he North half of the Southeast quarter of Section 18, Township 18 North, Range 13 East, Dwight Township, Huron County, Michigan." The deed provided that if the decedent had not conveyed the property prior to his death, the property was conveyed to defendant. The deed-of-gift conveyed the decedent's personal property to himself for his lifetime, including his farm machinery and crops, and upon his death, conveyed it to defendant if he had "not previously conveyed the property prior to [his] death." Additionally, the decedent had executed a last will and testament in 1988 in which he devised his entire estate to defendant, and executed a second will in 2002 in which he also made defendant his sole beneficiary.

## II. PROCEDURAL POSTURE

Plaintiff filed a petition against defendant seeking to set aside the quit-claim deed and deed-of-gift and claiming an interest in the property through the October 2001 documents. Plaintiff also claimed that if the court did not set aside the deeds, the decedent's estate would be unjustly enriched by his "time and efforts" spent farming the decedent's property without compensation. Defendant filed a motion for partial summary disposition pursuant to MCR 2.116(C)(8), asserting that she was not a proper party to the unjust enrichment action since it was the estate that was allegedly enriched unjustly. The court agreed, and dismissed the unjust enrichment claim because it "could only be maintained against Philip Leavine" or his estate.

Plaintiff thereafter amended his petition to name defendant individually *and* as personal representative of the decedent's estate. Defendant filed a motion to dismiss the unjust enrichment action against the estate pursuant to MCR 2.116(C)(7). In an affidavit, she attested to personal knowledge that plaintiff had not worked on the decedent's farm during the six years before he filed the litigation. She asserted that the unjust enrichment claim against the estate was thus barred by the applicable statute of limitations, MCL 600.5807(8). The court agreed. The trial court further concluded that the action was barred by the doctrine of laches because plaintiff failed to take any action after receiving the purported deed from the decedent in 2001.

---

[1] One document states simply "to Michael Leavine farm land and deed[;] 80 acres dwigt [sic] Huron Mich 10=20=01." The second document states, "Last will iansing [sic] of Philip Leavine[,] leave to Michael Leavine=machine and farm person propert [sic]—all cattle."

A bench trial went forth on plaintiff's claim as to the validity of the deeds. Following the trial, the court determined that plaintiff's documents were "ambiguous" and concluded that they did not meet the requirements of "a recordable document." Plaintiff's purported deed for real property did not contain terms of consideration or a legal description, and the court concluded that the purported conveyance of the decedent's personal property to plaintiff was defective because plaintiff believed that the document conveyed the personal property to him with immediate effect, but he had left all of the items in the decedent's possession for 13 years after allegedly receiving the conveyance. Based on the "ambiguities" in the documents, the court stated that it was necessary to "look at the totality of other circumstances . . . from admissible evidence." The court noted that the decedent had thrice declared his written intent to leave all of his property to defendant: in his 1988 will; in his 2002 will; and in his quit-claim deed and deed-of-gift in 2010. Thus, the court found that the decedent intended to leave his property to defendant and that the 2010 quit-claim deed and deed-of-gift were valid conveyances, whereas plaintiff's 2001 documents were not.

## III. VALIDITY OF DEEDS

Plaintiff argues first that the trial court erred in determining that the documents given to him by the decedent were not valid conveyances of property. Plaintiff asserts that even when a document is ambiguous or incomplete, the courts will seek to carry out the parties' intentions. Plaintiff further argues, without citing any supporting authority, that where a document describes the premises, the seller, and the buyer, and states the act and the date of conveyance, it "probably" conveys the premises. Plaintiff further states, also without authority, that when these elements are present in a deed that is signed and delivered to the buyer and the parties intend to convey the real property, the transaction constitutes a conveyance. We disagree with plaintiff's assertion that the documents he presented to the court were valid conveyances.

For "a writing transferring an interest in land" to comport with the statute of frauds, MCL 566.106, it "must be certain and definite with regard to the parties, property, consideration, premises, and time of performance. By its terms, the statute requires as an essential term that the writing be signed by the parties to be charged." *McFadden v Imus*, 192 Mich App 629, 633; 481 NW2d 812 (1992) (internal citation omitted).

Plaintiff's purported deed is clearly addressed to plaintiff, and is signed by the decedent. However, the document's description of the property, terms of consideration, and time of performance are not "certain and definite." The document's description of the property is minimalistic and vague, stating only: "80 acres dwig[h]t Huron Mich." Notably, although neither party contested which parcel of property the document referred to, the decedent was also the partial owner of a second 80-acre parcel of real property in Dwight Township. Plaintiff testified that he did not believe that the decedent was able to convey the second parcel because he only held a one-third ownership interest. However, the purported deed's description of the property does not delineate the extent of the decedent's interest in the property conveyed, and does not distinguish between the two parcels, which could create confusion. Additionally, the purported deed fails to meet the requirements set forth in *McFadden* with regard to terms of consideration or time of performance, as both elements are omitted from the document. The trial court thus did not err in determining that plaintiff's purported deed was not a valid conveyance.

Plaintiff argues that even if the document is ambiguous or incomplete, this Court should conclude that the intention of the decedent was to convey the farm land to him based on the words and actions of the grantor and the circumstances surrounding the transaction. Plaintiff claims that it is "indisputable" that the decedent delivered the purported deed with the intention to convey the subject property, but does not cite any support from the record for this statement. Moreover, plaintiff did not offer any proof at trial of his alleged agreement with the decedent that he would receive his real and personal property in exchange for his work on the farm other than the 2001 documents and his own testimony. Significantly, the evidence did not show that the decedent had maintained a desire to bequeath his farm to plaintiff, despite any agreement they may once have had or that the decedent's intention was to compensate plaintiff for his work on the farm by giving him the farm. Instead, all of the wills and other documents executed by the decedent in 1988, 2002, and 2010 named defendant as his sole intended beneficiary.

We also affirm the court's conclusion that the decedent did not make a valid conveyance to plaintiff of his personal property. The document offered by plaintiff to show the conveyance states that it is the "[l]ast will" of the decedent. Defendant did not contest the validity of the decedent's holographic will pursuant to MCL 700.2502(2), but asserted that the will was subsequently revoked by the decedent's 2002 will and 2010 deed-of-gift. We agree that to the extent that the 2001 document proffered by plaintiff was a valid will, it was subsequently revoked by the decedent's 2002 will and 2010 deed-of-gift. MCL 700.2507(1)(a) provides that a will may be revoked by the "[e]xecution of a subsequent will that revokes the previous will or a part of the will expressly or by inconsistency."

## IV. UNJUST ENRICHMENT

The trial court dismissed plaintiff's claim of unjust enrichment based on its conclusion that plaintiff's claim was barred by the doctrine of laches and by the six-year statute of limitations. We agree with this determination.

"[U]njust enrichment is (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 327; 657 NW2d 759 (2002) (citation omitted). Under the theory of unjust enrichment, "'the law operates to imply a contract'" when an express contract covering the same subject matter otherwise does not exist in order to prevent an inequity. *Id*. at 328.

Our Supreme Court "has long recognized that statutes of limitation may apply by analogy to equitable claims." *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119, 127 n 9; 537 NW2d 596 (1995). Similarly, MCL 600.5815 provides that "[t]he prescribed period of limitations shall apply equally to all actions whether equitable or legal relief is sought. The equitable doctrine of laches shall also apply in actions where equitable relief is sought." The statute of limitations for filing an unjust enrichment claim is therefore the same six-year period as that prescribed for a breach of contract claim. See MCL 600.5807(8).

Plaintiff argued before the trial court that the period of limitations should not have begun to run until after the decedent's death on November 13, 2014, when plaintiff presumably would have become aware of a competing claim on the property. However, the court concluded that

-4-

plaintiff's claim was barred by the doctrine of laches because plaintiff could have attempted to record his documents with the Register of Deeds after he received them in 2001, but instead chose to do nothing. The court noted that if plaintiff had attempted to register his deeds, "perhaps he would have found out that it was not drafted with sufficient clarity to allow it to be . . . recorded." The court further stated that plaintiff "could have at least put something on record to say I have some statutory claim to this property. He did none of those things," and thus had let his claim expire. The court's decision was not error.

This Court has held that laches denotes "the passage of time combined with a change in condition which would make it inequitable to enforce a claim against the defendant." *Tray v Whitney*, 35 Mich App 529, 536; 192 NW2d 628 (1971). "Laches differs from the statutes of limitation in that ordinarily it is not measured by the mere passage of time." *Lothian v Detroit*, 414 Mich 160, 168; 324 NW2d 9 (1982) (citation omitted). "Instead, when considering whether a plaintiff is chargeable with laches, we must afford attention to prejudice occasioned by the delay. As a general rule, '[where] the situation of neither party has changed materially, and the delay of one has not put the other in a worse condition, the defense of laches cannot . . . be recognized.' " *Id.* at 168 (citations omitted). "Simply stated, 'laches [is concerned] with the *effect* of delay', while 'limitations are concerned with the *fact* of delay.' " *Id.*, quoting *Sloan v Silberstein*, 2 Mich App 660, 676; 141 NW2d 332 (1966) (emphasis in original).

In this case, there was a significant change in condition between plaintiff's receipt of the document and the date he filed the action—the death of the decedent. The decedent was not available to testify as to his intent in delivering the documents to plaintiff, or to shed any light on the ambiguities in the documents. More importantly, defendant was not able to rely upon the decedent's testimony as to his intent in making her the beneficiary of his wills, quit-claim deed, and deed-of-gift. The trial court properly found that plaintiff's unjust enrichment claim was barred by the doctrine of laches based on defendant's inability to fully defend the action.

Plaintiff also argues that the statute of limitations did not begin to run until he discovered defendant's competing interest in the property upon the decedent's death in 2014. We disagree. Plaintiff acknowledged that he had stopped working on the farm more than six years before filing his action. Because plaintiff's claim was that the estate was unjustly enriched based on his work on the farm without compensation, the court's decision that the statute began to run when plaintiff stopped working at the farm was reasonable. In addition, we note that plaintiff's purported deed conveying the real property does not indicate that it was to take effect upon the decedent's death. Rather, the present tense language of the document indicates that the grantor intended for plaintiff to take possession at the time it was delivered. However, plaintiff did not take any steps to take possession at delivery. The trial court did not err in determining that the statute of limitations began to run when plaintiff stopped working on the farm.

Plaintiff also argues that the six-year statute of limitations should not have barred his case because defendant "fraudulently concealed" her interest in the property, citing MCL 600.5855. Plaintiff did not raise this issue before the trial court, but he did suggest in his petition that defendant was somehow at fault for pursuing her interest in the property because she allegedly had knowledge of the October 20, 2001 documents executed by the decedent to plaintiff. Plaintiff also testified that defendant was privy to his agreement with the decedent regarding the land and personal property, although defendant contradicted this testimony. However, even if

plaintiff had established that defendant was aware of his agreement with the decedent, plaintiff has pointed to no law which would require defendant to inform him of her interest in the property, or why her failure to do so would constitute fraudulent concealment.

MCL 600.5855 provides as follows:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Contrary to plaintiff's argument, this statute does not apply to the concealment of the acquisition of real or personal property, but "to the fraudulent concealment of a claim or the person liable for the claim." MCL 600.5855. As discussed, the "wrong" upon which plaintiff based his claim for unjust enrichment was the work that he performed on the farm without compensation. Because plaintiff has not shown that defendant fraudulently concealed the existence of a claim for unjust enrichment from him, he cannot show that he was entitled to pursue an action under the statute despite the running of the statute of limitations.

Similarly, plaintiff argues that his claim for unjust enrichment did not accrue until the decedent "died without satisfying the agreement made years prior to compensate Plaintiff for the work performed on the Subject Property," citing MCL 600.5827 and MCL 600.5829(2). This argument lacks merit because these statutes are not applicable to the instant case. MCL 600.5827 provides as follows:

> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

Pursuant to plaintiff's petition, the "wrong" that might have tolled the statute of limitations was not the death of the decedent, but when the services were provided by plaintiff without compensation. Plaintiff acknowledged that no services were rendered by him to the decedent in the six years preceding the filing of his petition. Thus, the court was justified in concluding that plaintiff's claim was barred by the statute of limitations because it accrued more than six years prior to the filing of the complaint.

MCL 600.5829(2) provides that when a party "claims as heir or devisee of one who died seised," the right to make an entry on and the claim to recover land accrues "at the time of the death, unless there is another estate intervening after the death of the ancestor or devisor in which case his claim accrues when the intermediate estate expires or would have expired by its own limitation[.]" Plaintiff's action was not for a right to make entry on land or a right to recover land, but rather was a claim for unjust enrichment. Thus, plaintiff's action did not arise

under this statute. Because plaintiff has not demonstrated that the trial court erred in determining that the applicable period of limitations in the instant case was six years or that his claim arose upon the decedent's death, we conclude that the court's decision to grant summary disposition in defendant's favor was correct.

Affirmed.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro