# STATE OF MICHIGAN

# COURT OF APPEALS

JANE DOE,

        Plaintiff-Appellant,

v

BISHOP FOLEY CATHOLIC HIGH SCHOOL,
REVEREND GERARD J. LEBOEUF, JOANNE
MOLNAR, NANCY HAGER, ARCHDIOCESE
OF DETROIT, HIS EMINENCE ADAM JOSEPH
MAIDA, SISTER MARY GEHRINGER, ROES
1-50,

        Defendants-Appellees,

and

RICHARD FISCHER,

        Defendant.

UNPUBLISHED
May 1, 2018

No. 336795
Oakland Circuit Court
LC No. 2016-153573-CZ

Before: BORRELLO, P.J., and SHAPIRO and TUKEL, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order dismissing the case with prejudice after granting summary disposition pursuant to MCR 2.116(C)(7) and (8) in favor of defendants-appellants Bishop Foley Catholic High School, Reverend Gerard J. LeBoeuf, Joanne Molnar, Nancy Hager, the Archdiocese of Detroit, His Eminence Adam Joseph Maida, Sister Mary Gehringer, and Roes 1-50 (collectively referred to as defendants-appellants), and defendant Richard Fischer. Fischer is not a party to the instant appeal.[1] For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

---

[1] Fischer was dismissed as a party by stipulation. *Doe v Bishop Foley Catholic High School*, unpublished order of the Court of Appeals, entered May 2, 2017.

-1-

This action commenced when plaintiff filed a complaint on June 17, 2016, alleging that Fischer sexually abused her in 2008, when Fischer was an art teacher at Bishop Foley Catholic High School and plaintiff was a 17-year-old student of Fischer's at the school.

According to plaintiff's complaint, plaintiff was a student at Bishop Foley between September 2004 and June 2008, and she was under the age of 18 years old throughout this time. She turned 18 at some point in 2008. Fischer had been an art teacher at Bishop Foley since 2002 and continued in that capacity until 2012. He was also the coach for the girls cross-country team from 2004-2008. Bishop Foley was governed by the Archdiocese of Detroit. LeBoeuf was the president of Bishop Foley; Molnar was the principal of Bishop Foley; Hager was a guidance counselor at Bishop Foley; Maida was a member of the Archdiocese's Catholic School Council that functioned as the governing body for schools within the Archdiocese, including Bishop Foley; and Gehringer was the superintendent of the Archdiocese schools, as well as a member of the Archdiocese's Catholic School Council. Plaintiff alleged that she was unaware of the true nature and capacities of the Roe defendants but that they were also "liable in some manner for the events referred to in the complaint."

Plaintiff's complaint alleged that during the spring of 2008, she began spending her study hour in Fischer's classroom to study with her friends. The complaint further alleged that over the course of the spring months, Fischer gained her trust by acting as "listening ear," "mentor," and "concerned authority figure" for plaintiff. Plaintiff alleged that Fischer eventually turned their conversations to sex, telling her that he was sexually attracted to her. Plaintiff and Fischer also began exchanging emails that became increasingly sexual and explicit. Additionally, plaintiff alleged that during this same approximate time period, Fischer told her that he "had previously had a relationship with another student, prior to graduation, in 2006" and that Fischer and this former student had dated since the student's sophomore year in 2004. Plaintiff's complaint alleged that Fischer eventually began physically touching and kissing plaintiff in various locations on the school grounds in and near his classroom. Plaintiff alleged that eventually, she and Fischer met off school grounds and plaintiff refused Fischer's requests to have sexual intercourse. According to plaintiff's complaint, Fischer ended their "relationship" shortly thereafter.

Plaintiff alleged that it was approximately June 2008, and before her graduation, that Fischer ended their "relationship." Plaintiff further alleged that Fischer told her that LeBoeuf and Molnar had discovered the relationship between Fischer and plaintiff and that LeBoeuf and Molnar had instructed Fischer not to contact plaintiff again. Plaintiff did not have any further contact with Fischer until approximately November 2008, when she visited Bishop Foley during a college break. According to the complaint, while plaintiff was at Bishop Foley, Fischer "isolated" her and told her that he was "trying to get better" and still happily married. Plaintiff further alleged that Fischer told her again about his meeting with LeBoeuf and Molnar and that he had received a "slap on the wrist" for his conduct involving plaintiff.

The complaint also alleged that Bishop Foley officials had known in 2006 about Fischer's previous relationship with a different student, which was the relationship that Fischer had disclosed to plaintiff in 2008. Plaintiff alleged that she was unaware of this information in 2008 but that on November 7, 2015, she learned that a parent had reported Fischer's previous relationship with a student to defendant Hager, who had disregarded the complaint. The

-2-

complaint further alleged that after learning of Fischer's inappropriate behavior in 2006, Bishop Foley officials failed to report Fischer's 2006 abuse of a student to Michigan authorities or the Archdiocese and that Bishop Foley officials "failed to take any meaningful investigatory, remedial or other disciplinary action against Fischer." After learning about the previous report, plaintiff notified the police, and a criminal investigation was initiated. Plaintiff alleged that during the course of this investigation, it was learned that "Fischer had a reputation for choosing an underage girl from each graduating class to be his 'girlfriend.' " Plaintiff also alleged that Bishop Foley officials had "continued their practice of indifference" upon learning of Fischer's inappropriate relationship with plaintiff, and they allowed Fischer to remain as a teacher. Plaintiff alleged that Bishop Foley officials could have prevented the abuse suffered by plaintiff but instead failed to act on the information they had about Fischer's previous misconduct. According to the complaint, plaintiff did not report at the time that she had been abused.

Based on the above factual allegations, plaintiff asserted claims of battery and violations of the Elliott-Larsen Civil Rights Act against Fischer. Plaintiff also asserted claims of negligence, negligence per se, negligent supervision and retention, negligent infliction of emotional distress, intentional infliction of emotional distress, fraudulent concealment, and conspiracy to commit fraud against all defendants.

With respect to the fraudulent concealment claim, plaintiff alleged that defendants "owed a heightened duty of care to Plaintiff because Plaintiff's parents were obligated to entrust Plaintiff to the Defendants' care" and that "each of the Defendants stood in an *in loco parentis* relationship with Plaintiff," which imposed an affirmative duty "to take any and all reasonable steps to protect Plaintiff and the other students entrusted to their care." Plaintiff alleged that this heightened duty included a "duty to disclose the fact—known only to Defendants—that Fischer had a propensity for sexually manipulating and abusing young girls," as well as an affirmative duty upon discovering Fischer's improper relationship with plaintiff to have disclosed to plaintiff, her mother, and the police that Fischer was suspected of previously sexually abusing another underage girl. Plaintiff further alleged that Hager's failure to disclose the prior incident constituted active concealment and suppression of those facts.

With respect to the conspiracy count, plaintiff alleged that defendants came to a mutual agreement after discovering the 2006 abuse to avoid reporting the incident and to conceal and suppress evidence of the incident if there were future allegations of sexual misconduct by Fischer.

In response to the complaint, defendants-appellants moved for partial summary disposition under MCR 2.116(C)(7) and (8) on the ground that plaintiff's claims were barred by the statute of limitations. The motion was one for partial summary disposition because it was brought on behalf of all defendants other than Fischer. In support of the motion, defendants-appellants argued that plaintiff's claims were all subject to a three-year statute of limitations, with the exception of the conspiracy to commit fraud claim, which was subject to a six-year statute of limitations. Defendants-appellants argued the limitations periods had therefore expired in 2011 and 2014 respectively. Defendants-appellants further argued that since plaintiff turned 18 in 2008, the limitations periods were not materially altered in this case by MCL 600.5851(1), which permits a person who is under 18 at the time that a claim accrues to bring an action within one year after reaching the age of majority even if the limitations period has run. Additionally,

defendants-appellants argued that plaintiff had failed to state a claim for fraudulent concealment that would permit her to circumvent the statute of limitations because plaintiff (1) did not plead acts or misrepresentations that constituted fraudulent concealment; (2) relied only on mere silence even though silence is not sufficient to show fraudulent concealment; and (3) could not maintain her fraudulent concealment claim as a matter of law because she knew or should have known all of the essential elements of a potential cause of action against defendants-appellants and such causes of action could not have been concealed from her based on plaintiff's own knowledge at the time about her injury, Fischer's employment at Bishop Foley, and the identity of the officials named as defendants in this case. Finally, defendants-appellants argued that because plaintiff had failed to state a claim for fraudulent concealment, she had necessarily failed to state a claim for conspiracy to commit fraud because she had not sufficiently alleged an actionable underlying tort claim.

Fischer also subsequently moved for partial summary disposition pursuant to MCR 2.116(C)(7) and (8). Fischer adopted the arguments advanced in the summary disposition motion filed by defendants-appellants and additionally argued plaintiff's claims of battery and violations of the Elliott-Larsen Civil Rights Act that were directed at Fischer were also barred by the statute of limitations.

In response to the summary disposition motion filed by defendants-appellants, plaintiff first argued that all of her claims were timely because she had properly pleaded fraudulent concealment and thus had two years from the time she discovered the existence of a claim or the identity of a potential defendant in which to bring an action.[2] Plaintiff argued that she had properly pleaded her underlying claims and her fraudulent concealment claim because defendants-appellants had breached their duty to her as a student to protect her from harm by ignoring the parent's complaint about Fischer and fraudulently concealed this act by discouraging the concerned parent from pursuing the matter, failing to disclose the information about Fischer to the school community, failing to report the matter to the proper authorities, hiding Hager's identity as a potential witness in a sexual abuse investigation, failing to disclose to plaintiff's mother that she had been sexually abused, and allowing plaintiff to believe that she was the only person Fischer had victimized.

---

[2] We note that in making this argument, plaintiff misconstrues the language of the applicable statute because the limitations period is actually based on the time when an individual discovers or *should have discovered* the existence of the claim of the identity of the liable party. MCL 600.5855 provides as follows:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action *discovers, or should have discovered*, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations. [Emphasis added.]

Plaintiff further argued that it was sufficient to rely on the silence of defendants-appellants to allege fraudulent concealment in this situation because schools and their administrators owe a special duty to students that amounts to a fiduciary duty, and defendants-appellants breached their fiduciary duty to plaintiff by doing nothing about Fischer's abusive conduct. Plaintiff argued that defendants-appellants also had an affirmative duty under Michigan's Child Protection Law, MCL 722.621 *et seq.*, to report Fischer's conduct in 2006, and defendants-appellants failed to do so. Nonetheless, plaintiff additionally argued, defendants-appellants still took affirmative action to fraudulently conceal the existence of plaintiff's claims because they discouraged the parent who complained in 2006 from further involvement and retained Fischer in a position of authority without disciplining him. Plaintiff also argued that she only became aware in 2015 that defendants-appellants knew about Fischer's 2006 conduct and that plaintiff had no duty to discover the fraud or the identity of the actors through an independent investigation because her lack of awareness was the result of defendants-appellants concealing the information in violation of their fiduciary duty.

Finally, plaintiff additionally argued that her conspiracy to commit fraud claim was properly pleaded because the underlying torts were not barred by the statute of limitations, that defendants-appellants were precluded from relying on the statute of limitations under the doctrine of equitable estoppel due to their "fraudulent actions and concealments over the last 8 years," and that the trial court should permit plaintiff to either complete discovery or conduct limited discovery on the statute of limitations and fraudulent concealment issues before ruling on the summary disposition motion. Plaintiffs essentially reiterated the above arguments in response to Fischer's motion for partial summary disposition.

Defendants-appellants argued in their reply brief that Michigan courts had not recognized the existence of a fiduciary relationship between students and teachers or other school officials.

In a written opinion and order, the trial court granted the motion for partial summary disposition filed by defendants-appellants. The trial court first concluded that plaintiff's claim of a fiduciary relationship between a student and a school or school officials was not supported by Michigan law and that plaintiff therefore could not rely on the silence of defendants-appellants to establish fraudulent concealment. The trial court further concluded that a contrary result was not required by plaintiff's allegations that defendants-appellants violated their statutory duty to report Fischer's abuse of another student in 2006 because such a claim cannot be brought by someone other than the abused child about whom no report was made. Next, the trial court concluded that the fraudulent concealment statute did not toll the limitations periods in this case because "Plaintiff's allegations, accepted as true, demonstrate that she knew or, with due diligence, should have known of a 'possible cause of action' regarding all of her claims against the Defendants within the limitations period." The trial court further determined that plaintiff had failed to allege any affirmative act or misrepresentation by defendants-appellants concealing a potential defendant or the existence of a cause of action that plaintiff was entitled to bring. Next, the trial court rejected plaintiff's equitable estoppel argument because the acts alleged by plaintiff did not show conduct designed to induce plaintiff to refrain from bringing the action or that plaintiff refrained from timely filing her lawsuit due to the actions of defendants-appellants. Finally, the trial court concluded that plaintiff's conspiracy claim was time-barred and also failed because there was no viable underlying tort claim to support the conspiracy claim. The trial court granted summary disposition pursuant to MCR 2.116(C)(7) and (8).

In a subsequent opinion and order, the trial court granted Fischer's motion for partial summary disposition as well. The trial court concluded that plaintiff's fraudulent concealment claim failed for the same reasons expressed in the trial court's previous opinion and order related to the motion filed by defendants-appellants. With respect to equitable estoppel, the trial court concluded that Fischer's statements in November 2008 to plaintiff, on which plaintiff relied for her equitable estoppel argument, did not constitute a promise to refrain from asserting the statute of limitations as an affirmative defense or the other "traditional type of conduct which would work an estoppel in the statute of limitations context under Michigan jurisprudence—e.g., an offer to compromise or settle the Plaintiff's claim, a representation that the limitations period was of much greater duration than it actually was, or part payment of the Plaintiff's claim." The trial court further concluded that the statements allegedly made by Fischer could not reasonably be understood to have fraudulently concealed plaintiff's cause of action because the allegations in the complaint showed that plaintiff knew that she was sexually abused by Fischer within the limitations period. The trial court granted summary disposition pursuant to MCR 2.116(C)(7) and (8) because plaintiff had failed to state a fraudulent concealment claim that would avoid the applicable limitations periods and her claims were all time-barred.

An order was entered dismissing plaintiff's case with prejudice. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo to determine whether the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court granted summary disposition under MCR 2.116(C)(7) and (8).

With respect to MCR 2.116(C)(7), our Supreme Court has explained the applicable legal principles as follows:

> Pursuant to MCR 2.116(C)(7), a party may move to dismiss a claim on the grounds that the claim is barred by the applicable statute of limitations. The question whether a cause of action is barred by the applicable statute of limitations is one of law, which this Court reviews de novo. . . . In reviewing whether a motion under MCR 2.116(C)(7) was properly decided, we consider all documentary evidence and accept the complaint as factually accurate unless affidavits or other appropriate documents specifically contradict it. [*Frank v Linkner*, 500 Mich 133, 140; 894 NW2d 574 (2017) (quotation marks and citations omitted).]

With respect to MCR 2.116(C)(8), our Supreme Court has explained the applicable legal principles as follows:

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When

deciding a motion brought under this section, a court considers only the pleadings. [*Maiden*, 461 Mich at 119-120 (quotation marks and citations omitted).]

Additionally, "[t]his Court reviews de novo the trial court's application of legal and equitable doctrines, including the doctrine[] of . . . equitable estoppel." *Sylvan Twp v City Of Chelsea*, 313 Mich App 305, 315-316; 882 NW2d 545 (2015). Issues involving the interpretation and application of statutes present questions of law that are also reviewed de novo. *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

## III. ANALYSIS

On appeal as in the trial court, plaintiff concedes that her claims against defendants-appellants would generally be time barred if not for the fraudulent concealment that plaintiff alleges defendants-appellants committed. Plaintiff argues that because defendants-appellants failed to disclose to plaintiff the previous 2006 abuse committed by Fischer, defendants-appellants fraudulently concealed the existence of her claim or the identity of liable individuals, making plaintiff's causes of action timely under the fraudulent concealment statute, MCL 600.5855, which states:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Plaintiff argues that the fraudulent concealment statute operated to toll the applicable statutes of limitations until she discovered the wrongdoing of defendants-appellants in 2015. Thus, plaintiff's primary issue on appeal is whether the fraudulent concealment statute is applicable such that plaintiff is not time barred from bringing her claims.

On appeal, plaintiff argues that defendants-appellants owed her a fiduciary duty to disclose their knowledge related to the previous 2006 incident involving Fischer and that as a result of this fiduciary duty, plaintiff could rely on the silence of defendants-appellants—i.e. their failure to disclose this information—to demonstrate fraudulent concealment. However, plaintiff's argument crucially ignores the fact that the undisputed factual allegations in her complaint demonstrate that she knew or should have known all of the essential elements of her claim within the limitations period, and thus there could have been no fraudulent concealment for purposes of MCL 600.5855. See, *Doe v Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich App 632, 642; 692 NW2d 398 (2004). Plaintiff incorrectly focuses on whether she can properly plead fraudulent concealment in a certain way while neglecting the fact that it is impossible for her to demonstrate fraudulent concealment at all because of the knowledge that she claims in her complaint to have personally possessed.

The fraudulent concealment statute, MCL 600.5855, is a legislatively created exception to statutes of limitations. *Doe*, 264 Mich App at 642. "Fraudulent concealment means

employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action." *Id*. (quotation marks and citation omitted). Generally, "[t]he fraud must be manifested by an affirmative act or misrepresentation." *Id*. (quotation marks and citation omitted). We may only consider actions by defendants-appellants that occurred after the alleged injury "because actions taken before the alleged injury would not have been capable of concealing causes of action that did not yet exist." *Id*. at 641.

However, and as is crucially important in the instant case, "[i]f there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of the statute, and in this behalf a party will be held to know what he ought to know . . . ." *Id*. at 643 (quotation marks and citation omitted). "For a plaintiff to be sufficiently apprised of a cause of action, a plaintiff need only be aware of a 'possible cause of action.' " *Id*. (citation omitted). In making this determination, we consider "the entire constellation of facts that were known or should have been known to plaintiff at the time the abuse occurred." *Id*. at 644. Furthermore, in *Archdiocese of Detroit*, this Court explained:

> For a cause of action to accrue, the entire theory of the case need not be apparent, nor is certitude required:
>
> > The fraudulent concealment which will postpone the operation of the statute must be the concealment of the fact that plaintiff has a cause of action. If there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of the statute, and in this behalf a party will be held to know what he ought to know, pursuant to the rule hereinbefore stated (i.e., by the exercise of ordinary diligence).
>
> > *It is not necessary that a party should know the details of the evidence by which to establish his cause of action*. It is enough that he knows that a cause of action exists in his favor, and when he has this knowledge, it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim. [*Id*. at 646-647 (quotation marks and citation omitted).]

In this case, all of plaintiff's underlying causes of action against defendants-appellants were founded on the basic allegation that defendants-appellants failed to protect her from the sexual abuse committed by Fischer because defendants-appellants did not take reasonable or sufficient actions in response to allegations of sexual abuse occurring at Bishop Foley that were made to defendants-appellants, including allegations specifically involving Fischer. Plaintiff's cause of action for intentional infliction of emotional distress additionally relies on her claim that defendants-appellants intentionally concealed Fischer's harassment and abuse. However, according to plaintiff's complaint, she also knew all of the following facts within a matter of months of the abuse she alleges was committed by Fischer: plaintiff knew that Fischer was a teacher at Bishop Foley when he allegedly sexually assaulted her on school property, that Fischer had a previous relationship with a Bishop Foley student in 2006 while that individual was still a student, that Fischer was still a teacher at Bishop Foley in 2008, that plaintiff's own

"relationship" with Fischer had been discovered by Bishop Foley officials, and that Fischer had only received a "slap on the wrist" as punishment for the incidents involving plaintiff and continued teaching at Bishop Foley.

Thus, plaintiff was well aware of facts that would show that Bishop Foley may have handled issues involving sexual misconduct committed by teachers in a negligent manner. Based on these facts, plaintiff knew or should have known about her causes of action predicated on the way defendants-appellants treated allegations of sexual misconduct committed by teachers against students and the failure of defendants-appellants to protect students from such harm. Plaintiff also should have been able to discover the identities of these various parties and their affiliation with Bishop Foley through ordinary diligence. Furthermore, to the extent that plaintiff's theories relied on showing that defendants-appellants knew about Fischer's proclivity for sexually abusing female students before the incident with plaintiff occurred in 2008, plaintiff should have been able to discover this information within the applicable limitations periods had she exercised ordinary diligence. It is difficult for plaintiff to argue otherwise, considering that she knew at the time how Bishop Foley officials had responded to learning of Fischer's misconduct directed at plaintiff, that Fischer had maintained a relationship with a previous Bishop Foley student from 2004 to 2006, and that Fischer continued to serve as a teacher at the school throughout this time period. It is not necessary that a plaintiff be aware of all of the details of the evidence that would support a cause of action, and a plaintiff has an obligation to exercise ordinary diligence to discover evidence relevant to a claim. *Id*. Here, based on "the entire constellation of facts that were known or should have been known to plaintiff at the time the abuse occurred," plaintiff knew or should have known that her causes of action against defendants-appellants existed, and therefore, no fraudulent concealment could exist. *Id*. at 643, 644, 646-647. Accordingly, the trial court did not err by concluding that plaintiff had failed to allege a claim for fraudulent concealment that would toll the applicable statutes of limitations.

Nonetheless, plaintiff argues that this Court essentially should either (1) find for the first time in Michigan that a fiduciary relationship exists between students and schools, school officials, and teachers; or (2) judicially create another exception to the general requirement that plead an affirmative action or misrepresentation to allege a claim of fraudulent concealment, with the exception to be applied in situations where educators know of a school employee's prior abuse of children and fail to disclose it. Plaintiff advances these arguments on the theory that either would allow her to rely on the silence of defendants-appellants—i.e. their failure to disclose the 2006 abuse allegedly committed by Fischer—to make her claim of fraudulent concealment. However, we need not address these issues in this case because we have concluded that regardless of whether plaintiff relied on affirmative acts or the silence of defendants-appellants in alleging fraudulent concealment, she cannot state a meritorious claim for fraudulent concealment in this case because she knew or should have known of her causes of action against defendants-appellants. We express no opinion on the merits of these particular additional arguments.

Next, plaintiff argues that defendants-appellants should not be permitted to rely on the statute of limitations pursuant to the doctrine of equitable estoppel.

The doctrine of equitable estoppel, as applied to statutes of limitation, was outlined in *Doe v Racette*, 313 Mich App 105, 108-109; 880 NW2d 332 (2015):

Equitable estoppel is a judicially created exception to the general rule which provides that statutes of limitation run without interruption[.] It is essentially a doctrine of waiver that extends the applicable period for filing a lawsuit by precluding the defendant from raising the statute of limitations as a bar. [A]bsent intentional or negligent conduct designed to induce a plaintiff to refrain from bringing a timely action, Michigan courts have been reluctant to recognize an estoppel[.] Such equitable power has traditionally been reserved for unusual circumstances such as fraud or mutual mistake because a court's equitable power is not an unrestricted license for the court to engage in wholesale policymaking[.] In the past, we have typically applied equitable estoppel in cases in which the defendant induced the plaintiff to believe the limitations period would not be enforced. [Citations and quotation marks omitted; alterations in original.]

In general, a plaintiff attempting to invoke the doctrine of equitable estoppel "must establish that (1) defendant's acts or representations induced plaintiff to believe that the limitations period clause would not be enforced, (2) plaintiff justifiably relied on this belief, and (3) she was prejudiced as a result of her reliance on her belief that the clause would not be enforced." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 204-205; 747 NW2d 811 (2008). Additionally, "a threat to murder a plaintiff and harm his family should he or she disclose instances of sexual abuse can establish the first element of equitable estoppel," because the threat necessarily encompasses all forms of disclosure, including disclosure in the form of a timely filed lawsuit." *Racette*, 313 Mich App at 110. Estoppel may also arise when one "by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." *Hetchler v American Life Ins Co*, 266 Mich 608, 613; 254 NW 221 (1934). Our Supreme Court "has been reluctant to recognize an estoppel in the absence of conduct clearly designed to induce the plaintiff to refrain from bringing action within the period fixed by statute" and has explained that the usual sort of conduct justifying application of the estoppel doctrine consists of "an offer to compromise or settle plaintiff's claim, a representation that the limitations period was of much greater duration than it actually was, or part payment of plaintiff's claim." *Lothian v City of Detroit*, 414 Mich 160, 177, 178; 324 NW2d 9 (1982) (quotation marks and citation omitted).

In this case, plaintiff has not alleged any actions taken by defendants-appellants that were meant to induce an erroneous belief that the relevant periods of limitation would go unenforced. None of plaintiff's allegations that she discusses in arguing for the application of equitable estoppel have anything to do with the applicable statutes of limitations, and there are no allegations that plaintiff was threatened with any type of harm to her or her family by any of the defendants-appellants. There is also no allegation of conduct suggesting an offer to compromise or settle plaintiff's claim, partial payment of plaintiff's claim, or a representation that the limitations period was greater than it was. *Id*. at 178. In short, there is no indication that defendants-appellants *induced* plaintiff to believe that the statutes of limitations would not be enforced, and plaintiff has therefore failed to demonstrate that equitable estoppel should apply in this case. *McDonald*, 480 Mich at 204-205; *Lothian*, 414 Mich at 177; *Racette*, 313 Mich App at 109-110.

Furthermore, the essence of plaintiff's claim is really that equitable estoppel is warranted in this situation because defendants-appellants concealed certain facts related to Fischer's sexual misconduct. However, to the extent that this could be understood to somehow have induced plaintiff into believing that she could not timely file her lawsuit because she did not believe that she had any causes of action, such reliance on the alleged actions and inactions of defendants-appellants by plaintiff would not be *justified* because of the knowledge of the events and circumstances that plaintiff possessed at the time, which we previously discussed in regard to plaintiff's fraudulent concealment claim. Therefore, because plaintiff could not have justifiably relied on any of the actions or inactions of defendants-appellants as reasons for delaying the filing of her lawsuit, the equitable estoppel doctrine may not be applied in this case. *McDonald*, 480 Mich at 204-205.

Finally, plaintiff argues that she should have been permitted to complete discovery before the trial court ruled on her motion. "Generally, a motion for summary disposition is premature if granted before discovery on a disputed issue is complete. However, summary disposition may nevertheless be appropriate if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 24-25; 672 NW2d 351 (2003) (citations omitted).

In this case, although summary disposition was granted before plaintiff could complete discovery on this point, the allegations of the complaint clearly indicate that plaintiff knew or should have known of her claims against defendants-appellants within the applicable limitations periods based on the knowledge she possessed in 2008. As previously stated, the fraudulent concealment exception does not apply if liability was already apparent to the plaintiff. *Archdiocese of Detroit*, 264 Mich App at 643. Accordingly, no further discovery could possibly lead to additional facts that would grant plaintiff relief under the fraudulent concealment exception. Summary disposition was not, therefore, premature. See *Peterson Novelties, Inc*, 259 Mich App at 24-25.

The trial court did not err by granting summary disposition in favor of defendants-appellants on the ground that all of plaintiff's causes of action were barred by the applicable statutes of limitations.

Affirmed. No costs are awarded. MCR 7.219(A).


/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Jonathan Tukel

-11-